IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

BRADFORD MORSE,

    Plaintiff,

v.                                     CASE NO. 1:21cv209-RH-HTC

SHARPSRING, INC. et al.,

    Defendants.

_____/

## ORDER OF DISMISSAL

This is a proposed class action under the Private Securities Litigation Reform Act. The shareholders of SharpSpring, Inc. approved a plan of merger—in effect, a cash sale of all shares. The shareholders received no further compensation—no interest in the surviving corporation.

The plaintiff Bradford Morse was a SharpSpring shareholder at the time of the transaction. He brought this action against SharpSpring and the individuals who were members of its Board of Directors at the time of the transaction. Mr. Morse asserts a claim under Securities Exchange Act § 14(a), which addresses false representations in proxy statements, and § 20(a), which addresses controlling-person liability for violations of the Act.

A prior order dismissed the first amended complaint but granted leave to amend. *See* ECF No. 45. Mr. Morse has filed a second amended complaint naming as defendants only SharpSpring and one of the directors, Richard Carlson, who was also the company's chief executive officer. The defendants have again moved to dismiss. The prior order sets out the governing law, the standards on a motion to dismiss, and a more detailed statement of facts than is necessary here. This order does not repeat what was said there.

The first amended complaint asserted the proxy statement soliciting shareholder approval of the merger was false in two respects. The first alleged falsehood was, in essence, that SharpSpring's directors actually *believed* the financial projections underlying their recommendation to approve the transaction. The second alleged falsehood was the implied per-share value calculated based on the projections. The first amended complaint asserted that, if the transaction was to go forward at all, the shares should have brought a higher price.

The second amended complaint continues to rely on the first but not the second of these two assertions. The second amended complaint tweaks the allegations underlying the first assertion—the actual-belief assertion—but not enough to make a difference. The analysis in the order dismissing the first amended complaint still applies. The actual-belief allegations do not state a claim on which relief can be granted.

The second amended complaint also adds a new alleged basis for recovery: the proxy statement's description of the price negotiations with the buyer, Constant Contact, Inc. Mr. Morse apparently acknowledges that what the proxy statement said on this subject was literally true, but he asserts the statement omitted material facts necessary to make the literally true information not misleading.

The background is this. Through its financial adviser JMP Securities LLC, SharpSpring cast a wide net for potential purchasers. *See* Second Am. Compl., ECF No. 47 at 17 ¶ 41; *see also* Proxy, ECF No. 52-1 at 45. The effort resulted in only a single offer. Constant Contact made a cash offer of $17 per share. The Board of Directors decided this was within an acceptable range but that JMP should ask Constant Contact to increase the bid to $17.25. JMP asked Constant Contact to increase the bid—so far so good—but JMP misunderstood the Board's directive and asked for an increase to only $17.10. Constant Contact agreed to that price. Learning of the mistake, JMP promptly went back to ask Constant Contact for $17.25, but Constant Contact said no. The deal went forward and eventually closed at $17.10.

Mr. Morse asserts, in effect, that nobody bids against themselves, and that the reason Constant Contact said no to $17.25 is that it had already agreed to the prior offer of $17.10. The defendants correctly note that this is speculation unsupported by concrete facts. What is less speculative is this: suggesting $17.10

could not have helped the effort to obtain $17.25. If it happened this way—as this order assumes it did—JMP erred. Still, the second amended complaint alleges no facts suggesting Constant Contact was willing or could have been persuaded to pay more.

More importantly, this is not an action challenging what JMP did prior to issuance of the proxy statement. This is, instead, a securities action challenging what was said *in* the proxy statement—the information provided to shareholders who were called on to approve or disapprove the merger. By the time the proxy statement was issued, what was done was done. The price was $17.10. Constant Contact had refused to pay $17.25. The proxy statement said so:

> The independent members of the Board continued the discussion . . . in executive session without Mr. Carlson or other members of management, and discussed seeking to have [Constant Contact] increase the proposed merger consideration to $17.25 per share. As part of the discussion, the independent members of the Board noted the prior conversation in which [Constant Contact] indicated that it was unwilling to increase their purchase price above $17.00 per share and concern that insisting on a higher purchase price could result in [Constant Contact] and its representatives terminating negotiations. . . . After additional discussion about their desire to move forward expeditiously and the relatively modest potential risk that the additional requests [about price and another matter] to [Constant Contact] could imperil the proposed transaction, the consensus of the directors present at the conclusion of the executive session was that Mr. Huey would instruct Mr. Carlson to obtain JMP Securities' viewpoint on the magnitude of the potential risk associated with the additional requests and, assuming the risk was modest, to proceed, with the assistance of representatives of JMP Securities, with a request to [Constant Contact] to increase the proposed merger consideration to $17.25

> per share . . . . After the executive session concluded, Mr. Huey communicated the instructions to Mr. Carlson by telephone.
>
> [C]ommunications ensued among Mr. Carlson, the Board of Directors and representatives of JMP Securities regarding the Board's proposed requests to [Constant Contact]. . . . JMP Securities expressed their belief to Mr. Carlson, who in turn relayed it to the full Board, that the proposed message to [Constant Contact] as instructed by the independent members of the Board would not present a material risk of [Constant Contact] terminating negotiations. Representatives of JMP Securities communicated a request to representatives of [Constant Contact] to increase the per share merger consideration. . . . Following additional communications . . . [Constant Contact] agreed to increase the proposed price per share to $17.10. Representatives of JMP Securities subsequently requested from representatives of [Constant Contact] an additional increase in the price per share to $17.25, but representatives of [Constant Contact] declined to further increase the price.

Proxy Statement at 39, ECF No. 52-1 at 50.

This was an accurate statement of what mattered at that point: Constant Contact was willing to pay $17.10, had been asked to pay $17.25, and had said no. The second amended complaint alleges no facts suggesting that at that point, Constant Contact was willing to pay more. And indeed, Mr. Morse affirmatively asserts Constant Contact was *not* willing to pay more. Mr. Morse says JMP had eliminated any possibility of a higher price.

The question for the shareholders at that point was whether to cash out for $17.10 or hold on. Cashing out for $17.25 was not an option. Renegotiating with Constant Contact was not an option. Nothing about the bungled negotiation—if it

was bungled as Mr. Morse asserts—would have affected a shareholder's reasonable evaluation of SharpSpring's likely performance going forward. *See Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1116–17 (1991) ("A misstatement or an omission in a proxy statement does not violate § 14(a) unless there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote."); *see also Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1317 (11th Cir. 2019) (addressing a § 10(b) claim and stating that "materiality depends on whether a substantial likelihood exists that a reasonable investor would have viewed a misrepresentation or omission as significantly alter[ing] the total mix of information made available") (internal quotations omitted). A shareholder could choose $17.10 or not, but knowing more than what was in the proxy about the negotiation was not material. What was material was that Constant Contact agreed to pay $17.10 and refused to pay $17.25.

  Perhaps for these reasons, the first amended complaint did not assert the proxy statement's treatment of the negotiation was an actionable misstatement or omission. The addition of this assertion to the second amended complaint does not change the result. The second amended complaint, like the first, fails to state a § 14(a) claim on which relief can be granted. This means it also fails to state a § 20(a) controlling-person claim on which relief can be granted.

This makes it unnecessary to address the defendants' additional argument that the second amended complaint fails to adequately allege loss causation.

For these reasons and those set out in the prior order,

IT IS ORDERED:

The motion to dismiss, ECF No. 50, is granted. The clerk must enter judgment stating, "The plaintiff's claims against all defendants are dismissed with prejudice for failure to state a claim on which relief can be granted." The clerk must close the file.

SO ORDERED on February 28, 2024.

                                        s/Robert L. Hinkle
                                        United States District Judge